United States District Court
Southern District of Texas
**ENTERED**
June 14, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FERNANDO GUERRERO, TDCJ #2142911, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. H-17-0386 |
| v. | § § | |
| MAYOR SYLVESTER TURNER, et al., | § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Fernando Guerrero has filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1), alleging that four officers employed by the City of Houston Police Department ("HPD") used excessive force against him during the course of his arrest. Pending before the court is Defendants' Motion for Summary Judgment filed by T.W. Zachau, M.V. Alva, C.M. Holloway, and M.C. Skinner ("Defendants' MSJ") (Docket Entry No. 26). Guerrero has not filed a response and his time to do so has expired. After considering the pleadings, the exhibits, and the applicable law, the court will grant the Defendants' MSJ and will dismiss this case for the reasons explained below.

## I. Background

The incident that forms the basis of the Complaint occurred at an apartment complex in Houston, Texas, on December 12, 2015.[1]

---

[1]Complaint, Docket Entry No. 1, p. 4. For purposes of identification, all page numbers refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

Guerrero explains that he was "inside [an] apartment stealing 2 kilos of cocaine" when he was confronted by several HPD officers.[2] Before breaking into the apartment, Guerrero robbed a man at knifepoint, taking his car and his wallet.[3] Guerrero, who was in possession of two knives and a "replica shotgun" that he found in the apartment, attempted to flee from the scene.[4] As he fled from the apartment, Guerrero was bitten by a K-9, tasered, and shot in the chest by the officers who eventually arrested him.[5] Arguing that the force used was excessive, Guerrero seeks $100,000,000.00 in compensatory damages under 42 U.S.C. § 1983 for the violation of his constitutional rights.[6]

The court authorized service of process and requested an answer from the HPD officers identified by Guerrero.[7] Officers T.W. Zachau, M.V. Alva, C.M. Holloway, and M.C. Skinner now move for summary judgment, noting that Guerrero was subsequently

---

[2]Plaintiff's More Definite Statement, Docket Entry No. 9, p. 1.

[3]HPD Incident Report 1588475-15, Exhibit B-2 to Defendants' MSJ, Docket Entry No. 26-5, pp. 1-2, 19-20, 25.

[4]Plaintiff's More Definite Statement, Docket Entry No. 9, p. 1.

[5]Complaint, Docket Entry No. 1, p. 4.

[6]Id.

[7]Order for Service of Process, Docket Entry No. 10, p. 1. The Complaint also identifies City of Houston Mayor Sylvester Turner, Chief of Police Art Acevedo, and former Acting Chief of Police Martha Montalvo. See Complaint, Docket Entry No. 1, pp. 1, 3. Because Guerrero does not allege facts establishing liability on the part of these supervisory officials, the claims against them will be dismissed.

convicted of several serious criminal offenses, including burglary of a habitation and aggravated robbery with a deadly weapon as a result of his arrest on December 12, 2015.[8] The defendants argue that Guerrero, as a dangerous fleeing felon, has not established that their efforts to apprehend him were unreasonable or that a constitutional violation occurred.[9] Defendants argue that they are entitled to qualified immunity from his claims.[10] In support of those arguments, the officers have provided affidavits and over 200 pages of records from the ensuing investigation, which refute Guerrero's claim that the amount of force used was unreasonable.[11]

According to the police report, officers were dispatched to a home invasion burglary at an apartment complex where the suspect,

---

[8] See Defendants' MSJ, Docket Entry No. 26, p. 3; Deposition of Fernando Guerrero, Exhibit A to Defendants' MSJ, Docket Entry No. 26-1, p. 6 (page 46 of the Deposition, lines 20-23); TDCJ Offender Information website, located at http://offender.tdcj.texas.gov (last visited June 8, 2018) (reflecting that Guerrero was convicted and sentenced to 20 years' imprisonment for aggravated robbery with a deadly weapon and two counts of burglary of a habitation in Harris County Cause Nos. 1493328010101, 149161901010, and 149161801010 stemming from the offenses he committed on December 12, 2015).

[9] See Defendants' MSJ, Docket Entry No. 26, pp. 5-9.

[10] See id. Arguing further that Guerrero's excessive-force claims implicate the validity of his conviction for aggravated robbery with a deadly weapon, the defendants contend that his claims are barred by Heck v. Humphrey, 114 S. Ct. 2364 (1994). See Defendants' MSJ, Docket Entry No. 26, pp. 4-5. The court does not reach this argument because, for reasons detailed further below, Guerrero fails to overcome the defense of qualified immunity in this case.

[11] See Exhibits A through K to Defendants' MSJ, Docket Entry Nos. 26-1 through 26-23.

who was reportedly armed with a shotgun, was present.[12] Officer Zachau, accompanied by a K-9, encountered Guerrero as he was fleeing from the apartment. Officer Zachau believed that Guerrero was dangerous because he had just committed a home invasion.[13] In an effort to apprehend Guerrero, Zachau released his K-9.[14] When the K-9 made contact with Guerrero, Zachau ordered Guerrero to lie still on the ground, but Guerrero did not obey the commands and instead began to forcefully strike the dog.[15] As Guerrero was attacking his dog, Officer Zachau began to strike Guerrero with his hands in an effort to gain Guerrero's compliance.[16] When this was "ineffective," Zachau deployed a "Conducted Energy Device" or taser.[17] Guerrero, however, proceeded to break the taser wires and continued his attempts to escape.[18]

When Officer Alva arrived he observed that the taser deployed by Zachau was having no effect on Guerrero, who was "punching the K-9" and actively attempting to flee.[19] As Guerrero squared off to

---

[12] HPD Incident Report 1589665-15, Exhibit B-1 to Defendants' MSJ, Docket Entry No. 26-3, pp. 4-5.

[13] Affidavit of T.W. Zachau ("Zachau Affidavit"), Exhibit C to Defendants' MSJ, Docket Entry No. 26-16, p. 1 ¶ 4.

[14] Id. at 2 ¶ 5.

[15] Id. ¶ 6.

[16] Id.

[17] Id.

[18] Id.

[19] Affidavit of M.V. Alva ("Alva Affidavit"), Exhibit D to Defendants' MSJ, Docket Entry No. 26-17, pp. 1-2 ¶ 5.

face the officers who were surrounding him, Officer Alva observed a "knife sheath" in Guerrero's waistband and he drew his firearm.[20] Officer Holloway also drew his firearm after he observed the knife sheath and saw that Guerrero was about to charge Officer Alva.[21] Guerrero, who was refusing to obey orders to lie on the ground, then reached for his waistband with both hands.[22] Believing that Guerrero was going for his knife, Officer Alva feared for his life and discharged his firearm one time, striking Guerrero in the chest.[23] After cursing at the officers, Guerrero then attempted to climb a nearby fence before he was pulled to the ground.[24] Officer Skinner and Officer Holloway also deployed tasers in an effort to subdue Guerrero, who remained belligerent and was threatening to overpower the officers.[25]

Although he was handcuffed and on a stretcher, Guerrero continued to resist arrest and behave in a combative manner, fighting with paramedics from the Houston Fire Department ("HFD")

---

[20]Id. at 2 ¶¶ 5-7.

[21]Affidavit of C.M. Holloway ("Holloway Affidavit"), Exhibit E to Defendants' MSJ, Docket Entry No. 26-18, p. 2 ¶ 5.

[22]Alva Affidavit, Exhibit D to Defendants' MSJ, Docket Entry No. 26-17, p. 2 ¶ 7.

[23]Id.

[24]Id. ¶ 8.

[25]Holloway Affidavit, Exhibit E to Defendants' MSJ, Docket Entry No. 26-18, p. 2 ¶ 7; Affidavit of M.C. Skinner ("Skinner Affidavit"), Exhibit F to Defendants' MSJ, Docket Entry No. 26-19, p. 2 ¶ 6.

and spitting at them.[26] When asked by the paramedics, Guerrero admitted having consumed an entire "8 ball" of cocaine before the incident occurred.[27] It took several officers, paramedics, and hospital personnel to remove Guerrero from the ambulance.[28] Because Guerrero continued to spit at the officers and emergency personnel assisting him, hospital staff had to place a "spit mask" on him.[29] It was only after doctors administered a sedative that they were able to attend to Guerrero's injuries.[30]

## II. Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). An issue is

---

[26] Skinner Affidavit, Exhibit F to Defendants' MSJ, Docket Entry No. 26-19, p. 2 ¶ 10.

[27] Holloway Affidavit, Exhibit E to Defendants' MSJ, Docket Entry No. 26-18, pp. 2-3 ¶¶ 9-10.

[28] Id. at 3 ¶ 10.

[29] Id.

[30] Id.

"genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id.

In deciding a summary judgment motion the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks and citation omitted). However, the non-movant "cannot rest on [his] pleadings" where qualified immunity is asserted. Bazan v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001) (emphasis in original). Nor can the non-movant avoid summary judgment simply by presenting "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, Mississippi, 678 F.3d 344, 348 (5th Cir. 2012) (quoting TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002)); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). If the movant demonstrates an "absence of evidentiary support in the record for the nonmovant's case," the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." Sanchez v. Young County, Texas, 866 F.3d 274, 279 (5th Cir. 2017) (citing Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010)); see also

Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

The plaintiff proceeds pro se in this case. Courts construe pleadings filed by pro se litigants under a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed[.]'") (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)). Nevertheless, "pro se parties must still brief the issues and reasonably comply with [federal procedural rules]." Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995) (citations omitted). The Fifth Circuit has held that "[t]he notice afforded by the Rules of Civil Procedure and the local rules" is "sufficient" to advise a pro se party of his burden in opposing a summary judgment motion. Martin v. Harrison County Jail, 975 F.2d 192, 193 (5th Cir. 1992) (per curiam).

## III. Discussion

### A. Qualified Immunity

The defendants argue that Guerrero fails to demonstrate a violation of the Fourth Amendment to the United States Constitution, which governs claims of excessive force in the context of an arrest.[31] Arguing further that Guerrero fails to establish that a constitutional violation occurred the defendants

---

[31]Defendants' MSJ, Docket Entry No. 26, p. 7.

move for summary judgment on the grounds that they are entitled to qualified immunity from Guerrero's claims.[32]

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982)). This is an "exacting standard," City and County of San Francisco, California v. Sheehan, 135 S. Ct. 1765, 1774 (2015), that "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986)). A plaintiff seeking to overcome qualified immunity must satisfy a two-prong inquiry by showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted).

As this standard reflects, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." King v. Handorf, 821 F.3d 650, 653-54 (5th Cir. 2016) (internal quotation marks and citations omitted). "The plaintiff

---

[32] Id. at 5-9.

must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." Id. at 654 (quoting Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 419 (5th Cir. 2008)). "'To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present "absolute proof," but must offer more than "mere allegations."'" Id. (quoting Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009)).

**B. Claims of Excessive Force Under the Fourth Amendment**

A claim that law enforcement officers used excessive force to effect an arrest is governed by the "reasonableness" standard found in the Fourth Amendment. See Graham v. Connor, 109 S. Ct. 1865, 1871 (1989); Tennessee v. Garner, 105 S. Ct. 1694, 1699-1700 (1985). To prevail on an excessive-force claim in this context, a plaintiff must establish "'(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" Trammell v. Fruge, 868 F.3d 332, 340 (5th Cir. 2017) (quoting Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009)).

A Fourth Amendment reasonableness determination "requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers

or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." Trammell, 868 F.3d at 340 (citation and internal quotation marks omitted). In determining reasonableness courts are required to make "allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Graham, 109 S. Ct. at 1872. Thus, the reasonableness of the use of deadly force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. An officer's use of deadly force is presumptively reasonable if the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others. See Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003); Manis v. Lawson, 585 F.3d 839, 843 (5th Cir. 2009) (observing that the use of deadly force is not excessive under the Fourth Amendment if the officer reasonably believes the suspect poses a threat of serious harm).

There is no dispute that Guerrero was armed with a deadly weapon on December 12, 2015, when he committed the offenses of aggravated robbery and burglary of a habitation.[33] The knife that

---

[33]See Plaintiff's More Definite Statement, Docket Entry No. 9, p. 1; see also Judgment of Conviction by Jury, Cause No. 149332801010, Exhibit J to Defendants' MSJ, Docket Entry No. 26-22, p. 1 (finding in the affirmative that Guerrero used a deadly weapon during the commission of the aggravated robbery offense on December 12, 2015).

Guerrero used during the robbery was recovered along with the victim's wallet at the scene of the burglary.[34]

The evidence shows that Officer Zachau deployed his K-9 and then his taser after Guerrero refused to obey repeated verbal orders as he continued to attempt to evade arrest for a serious felony offense.[35] Officer Alva discharged his firearm after Guerrero, who remained combative despite being tasered, appeared to reach for a knife, placing Alva in fear for his life and the safety of the other officers.[36] Officer Holloway and Officer Skinner deployed their tasers because, even after being shot, Guerrero continued attempting to flee.[37]

Because a firearm was discharged during the incident, the officers' actions were documented and investigated by HPD as required by departmental policy.[38] Officers employed by HPD are authorized "to use force to protect themselves or others, to effect

---

[34]HPD Incident Report 1588475-15, Exhibit B-2 to Defendants' MSJ, Docket Entry No. 26-5, p. 19.

[35]Zachau Affidavit, Exhibit C to Defendants' MSJ, Docket Entry No. 26-16, p. 2 ¶¶ 5-9.

[36]Alva Affidavit, Exhibit D to Defendants' MSJ, Docket Entry No. 26-17, pp. 1-2 ¶¶ 5-7.

[37]Holloway Affidavit, Exhibit E to Defendants' MSJ, Docket Entry No. 26-18, p. 2 ¶¶ 5-7; Skinner Affidavit, Exhibit F to Defendants' MSJ, Docket Entry No. 26-19, p. 2 ¶¶ 6-8.

[38]Affidavit of Wendy Baimbridge ("Baimbridge Affidavit"), Exhibit H to Defendants' MSJ, Docket Entry No. 26-20, p. 2 ¶¶ 5, 13; HPD Incident Report 1589665-15, Exhibit B-1 to Defendants' MSJ, Docket Entry No. 26-3, pp. 16-21, 33-47.

an arrest, or to maintain custody of those arrested."[39] Deadly force is permissible "in circumstances in which officers reasonably believe it is necessary to protect themselves or others from the imminent threat of serious bodily injury or death."[40] The internal investigation conducted by HPD concluded that the officers' actions did not violate departmental policy and that "the force used by the officers was reasonable under the circumstances."[41]

The officers who encountered Guerrero on the day of his arrest state that Guerrero was actively resisting arrest despite being tasered and that his actions posed an immediate threat of serious bodily injury.[42] There is no evidence in the record that contradicts the officers' accounts, which are supported by police reports and records of the investigation.[43] Those records, which also include accounts from paramedics dispatched by HFD and other

---

[39]HPD General Order 6-17 (Use of Force), Exhibit B-10 to Defendants' MSJ, Docket Entry No. 26-13, p. 1.

[40]Id. at 4.

[41]Baimbridge Affidavit, Exhibit H to Defendants' MSJ, Docket Entry No. 26-20, p. 4 ¶ 14.

[42]Holloway Affidavit, Exhibit E to Defendants' MSJ, Docket Entry No. 26-18, p. 2 ¶ 5; Alva Affidavit, Exhibit D to Defendants' MSJ, Docket Entry No. 26-17, p. 2 ¶ 7; Zachau Affidavit, Exhibit C to Defendants' MSJ, Docket Entry No. 26-16, p. 2 ¶ 8.

[43]See HPD Incident Report 1589665-15, Exhibit B-1 to Defendants' MSJ, Docket Entry No. 26-3, pp. 1-47, continued at Docket Entry No. 26-4, pp. 1-48; see also HPD Incident Report 1588475-15, Exhibit B-2 to Defendants' MSJ, Docket Entry No. 26-5, pp. 1-25.

personnel, demonstrate that Guerrero continued to actively resist arrest even after he was shot.[44]

Viewing the circumstances from the perspective of the officers, see Graham, 109 S. Ct. at 1872, they could have concluded that Guerrero was an armed felon intent on escaping, who posed an immediate threat to their safety and to the safety of others if he had succeeded in evading arrest. See Poole v. City of Shreveport, 691 F.3d 624, 629 (5th Cir. 2012) (holding that force was not excessive where a suspect refused to turn around and be handcuffed, posed an immediate threat to the safety of the officers, and actively resisted arrest). The Fifth Circuit has upheld the use of deadly force where a suspect could have reasonably been interpreted as reaching for a weapon. See Ontiveros v. City of Rosenberg, Texas, 564 F.3d 379, 385 (5th Cir. 2009) (citing Reese v. Anderson, 926 F.2d 494 (5th Cir. 1991) (refusing to find excessive force where the suspect repeatedly refused to keep hands raised and appeared to be reaching for an object) (citation omitted)). Viewing the evidence in the light most favorable to Guerrero, as the non-movant, the use of force was not objectively unreasonable or excessive and did not violate the Fourth Amendment. See

---

[44]EMS Patient Care Report, Docket Entry No. 27, pp. 1, 5; HPD Incident Report 1589665-15, Exhibit B-1 to Defendants' MSJ, Docket Entry No. 26-3, pp. 26-27, 40, 44, 45, 47; Baimbridge Affidavit, Exhibit H to Defendants' MSJ, Docket Entry No. 26-20, pp. 2-3; Skinner Affidavit, Exhibit F to Defendants' MSJ, Docket Entry No. 26-19, p. 2 ¶¶ 6, 9.

Plumhoff v. Rickard, 134 S. Ct. 2012, 2022 (2014); Francis v. Garcia, 702 F. App'x 218, 222-23 (5th Cir. 2017).

Based on this record, Guerrero has not established a constitutional violation and he has not otherwise overcome the officers' entitlement to qualified immunity from the claims against them. Because the record contains no genuine issue for trial, Defendants' MSJ will be granted.

## C. Remaining Defendants

Guerrero also lists Mayor Sylvester Turner, Chief of Police Art Acevedo, and former Acting Chief of Police Martha Montalvo as defendants. Guerrero contends that these supervisory officials failed to conduct an adequate investigation into the excessive use of force that was used during his arrest.

"Under § 1983, officials are not vicariously liable for the conduct of those under their supervision." Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 420 (5th Cir. 2017) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)). "Supervisory officials are accountable for their own acts . . . and for implementing unconstitutional policies that causally result in injury to the plaintiff." Id. Thus, to establish liability against supervisory officials under § 1983 a plaintiff "must allege either that they participated in acts that caused constitutional deprivation or that they implemented unconstitutional policies causally related to his injuries." Id. at 421 (citing Mouille, 977 F.2d at 929).

Guerrero has not established that the force used during his arrest was unreasonable or excessive under the circumstances, which were investigated by HPD. Likewise, Guerrero does not allege facts demonstrating that the investigation was deficient or that HPD has an official policy or practice of conducting inadequate investigations into the use of force by officers. His allegations against the supervisory officials therefore fail to state an actionable claim. Accordingly, the allegations against Mayor Turner, Chief Acevedo, and former Acting Chief Montalvo will be dismissed for failure to state a claim upon which relief may be granted.

### IV. Conclusion and Order

Accordingly, the court **ORDERS** as follows:

1. Defendants' Motion for Summary Judgment (Docket Entry No. 26) is **GRANTED**. The claims against Officers T.W. Zachau, M.V. Alva, C.M. Holloway, and M.C. Skinner will be dismissed with prejudice.

2. The claims lodged by Guerrero against the remaining defendants listed in the Complaint (Mayor Sylvester Turner, Chief of Police Art Acevedo, and former Acting Chief of Police Martha Montalvo) will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 14th day of June, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE